1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DORTHEA M. ABDICH,

    Plaintiff,

  v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

    Defendant.

CASE NO. C04-5519KLS

ORDER REVERSING THE
COMMISSIONER'S DECISION
TO DENY BENEFITS

  Plaintiff, Dorthea M. Abdich, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits.  The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13.  After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

  Plaintiff currently is forty-two years old.[1] Tr. 23.  She completed the eighth grade and obtained her general equivalency diploma. Tr. 83.  She has past work experience as a retail clerk and fast food worker. Tr. 20, 78.

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

Plaintiff protectively filed an application for SSI benefits on October 23, 2000, alleging disability as of June 1, 1999, due to post traumatic stress syndrome, suicidal tendencies, and manic depression. Tr. 15, 24, 70, 77.  Her application was denied initially and on reconsideration. Tr. 23-25, 30.  Plaintiff requested a hearing, which was held on March 24, 2003, before an administrative law judge ("ALJ"). Tr. 402.  At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 402-19.

On May 5, 2003, the ALJ issued a decision finding plaintiff not disabled. Tr. 21-22.  Specifically, the ALJ found in relevant part as follows:

(1)   at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity;

(2)   at step two, plaintiff had "severe" impairments consisting of an anxiety disorder, an affective disorder and a substance abuse disorder;

(3)   at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)   at step four, plaintiff retained a residual functional capacity without physical limitations, with certain additional non-exertional limitations, and had no past relevant work; and

(5)   at step five, plaintiff was capable of performing other work existing in significant numbers in the national economy.

Id.  Plaintiff's request for review was denied by the Appeals Council on June 22, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 416.1481.

On August 20, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1).  Plaintiff argues that decision should be reversed and remanded for an award of benefits because:

(a)   the ALJ erred in evaluating the medical evidence in the record regarding her mental impairments and limitations;

(b)   the ALJ erred in finding her post traumatic stress syndrome not severe;

(c)   the ALJ erred in assessing her credibility;

(d)   the ALJ erred in assessing her residual functional capacity; and

(e)   the ALJ erred in finding her capable of performing other work existing in significant numbers in the national economy.

In response, defendant filed a motion to remand this matter for further administrative proceedings, arguing that there remain unresolved issues concerning the medical evidence in the record regarding plaintiff's mental impairments and limitations.  For the reasons set forth below, however, the undersigned disagrees,

1    and finds that this matter should be remanded to the Commissioner for an award of benefits.

2                                        <u>DISCUSSION</u>

3           This court must uphold the Commissioner's determination that plaintiff is not disabled if the

4    Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

5    support the decision.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

6    such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson</u>

7    <u>v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

8    a scintilla but less than a preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir.

9    1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

10   one rational interpretation, the court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>, 749 F.2d

11   577, 579 (9th Cir. 1984).

12   I.      <u>The ALJ Improperly Evaluated the Medical Evidence in the Record Regarding Plaintiff's Mental
             Impairments and Limitations</u>

13

14           The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

15   medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the

16   record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the

17   ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, therefore, "the ALJ's

18   conclusion must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595,

19   601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in

20   fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical

21   experts "falls within this responsibility." <u>Id.</u> at 603.

22           In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

23   supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a

24   detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

25   thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence."

26   <u>Sample</u>, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the

27   ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

28           The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

     either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

1  treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

2  legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the

3  ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739

4  F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain

5  why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07

6  (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

7        In general, more weight is given to a treating physician's opinion than to the opinions of those who

8  do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

9  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings."

10  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th

11  Cir. 2001); Magallanes, 881 F.2d at 75.  An examining physician's opinion is "entitled to greater weight

12  than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's

13  opinion may constitute substantial evidence if "it is consistent with other independent evidence in the

14  record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

15        A.    Dr. Conaway

16        Plaintiff argues the ALJ erred in evaluating the opinion of Linda Conaway, Ph.D., an examining

17  psychologist, regarding her mental limitations and level of functioning.  With respect to that opinion, the

18  ALJ found as follows:

19        Dr. Conaway reported that the claimant had a depressive disorder, [posttraumatic stress
          syndrome] PTSD, a panic disorder, a personality disorder, substance abuse, and learning
20        disorder NOS . . . Dr. Conaway opined that these impairments caused some marked
          restrictions in cognition and social functioning, and she rated the claimant's [global
21        assessment of functioning] GAF [score] at 45 . . . She reported that **abstinence would
          improve the claimant's level of functioning.**
22
          With respect to the claimant's functioning specifically, Dr. Conaway noted that the
23        claimant could not interact with others, sustain attention and remember instructions, and
          handle work stresses.  Overall, she thought that the claimant could not work . . .
24
          This report is based on an interview and testing, and therefore [is] given great weight.
25        However, it mainly relies on the claimant's subjective comments.  There is no significant
          evidence [that] supports the claimant's allegations and subjective reports, except when
26        she is using meth[amphetamines].  She functions much better when she is clean and
          sober, and takes her medication.
27
28  Tr. 19 (emphasis in original).  The undersigned agrees that the ALJ erred in so finding, and that the ALJ's

    rejection of Dr. Conaway's opinion is not supported by the substantial evidence in the record.

It is true that Dr. Conaway found plaintiff had issues with drug abuse, noting that she had "a history of significant methamphetamine abuse," that she had been "clean" for only four months, that her problems with attention, memory and pace could be due in part to "withdrawal," and that she was "at high risk for relapse" unless she was involved in a drug treatment program. Tr. 338. Nowhere in her report, however, did Dr. Conaway state that abstinence would improve plaintiff's functioning, or that plaintiff continued to abuse drugs. Instead, Dr. Conaway opined as follows:

> [T]he client has a history of learning problems and her test results would suggest that she would have problems with math and perhaps reading. She also has problems with attention and memory. Her pace of performance was also slow. It is unclear whether her attention, memory and pace problems are the result of depression, anxiety, withdrawal, her history of concussions or some combination of all of these. . . . Her judgment in general appears to be poor. . . .

> [S]he would not at this point be able to handle having to interact with others. Her depressive symptoms and her anxiety would significantly interfere with her ability to work at this time. She would have problems sustaining her attention and remembering instructions. She would have difficulties handling work stresses. She also is at high risk for relapse unless she is involved in a drug treatment program. It seems unlikely that the client will be able to work in the next year given the muliplicity of her problems and her non-existent work history.

> The client would need assistance to manage her own funds.

Id. Thus, while Dr. Conaway did opine that some of plaintiff's mental functional limitations could be due to symptoms of withdrawal, she felt plaintiff was unable to work for at least a year based on all her mental problems and the lack of a work history.

The ALJ further discounted Dr. Conaway's opinion because it was based on plaintiff's subjective complaints, which the ALJ found not fully credible. As discussed below, however, the ALJ improperly discredited plaintiff's symptom testimony, which, also as discussed below, supports her allegation of being incapable of working. It is questionable at best, furthermore, to reject an examining psychologist's opinion because that opinion was based on the claimant's subjective comments. The diagnoses and observations of professionals trained in the field of psychopathology constitute competent evidence when mental illness is the basis of a disability claim:

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability

1    claim, clinical and laboratory data may consist of the diagnoses and observations of
     professionals trained in the field of psychopathology. The report of a psychiatrist
2    should not be rejected simply because of the relative imprecision of the psychiatric
     methodology or the absence of substantial documentation, unless there are other
3    reasons to question the diagnostic technique.

4    Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (quoting Christensen v. Bowen, 633 F.Supp.

5    1214, 1220-21 (N.D.Cal.1986)) (emphasis added); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th

6    Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent

7    psychiatric evidence). Here, in addition to plaintiff's own subjective reports, Dr. Conaway also relied on

8    psychological testing and her own observations to diagnose plaintiff and determine her mental functional

9    capabilities and limitations.

10         Lastly, as noted above, the ALJ discounted Dr. Conaway's opinion in part because there was "no

11   significant evidence" to support plaintiff's "allegations and subjective reports, except when she is using

12   meth[amphetamines]." Tr. 19.  None of the other medical sources in the record, however, have found her

13   mental impairments and limitations to be due to drug abuse.  For example, although Mark B. Whitehall,

14   Ph.D., another psychologist who examined plaintiff, thought there was an indication of alcohol or drug

15   abuse, he did not think that any of her diagnosed mental impairments (including "chronic and severe"

16   PTSD, "severe" recurrent major depression, and borderline personality disorder) had been caused by such

17   abuse. Tr. 330.  Dr. Richard Biebuyck, an examining psychiatrist, felt it was plaintiff's PTSD and "the

18   severity of her physical and sexual abuse," not her substance abuse, that prevented her from being able to

19   "maintain regular attendance in the work place." Tr. 180.

20         While Thomas Clifford, Ph.D., another non-examining psychologist, apparently believed there was

21   insufficient evidence to support a diagnosis of any mental impairments, he provided no clinical findings or

22   other information to support that conclusion. Tr. 132.  Further, although Dr. Harold B. Johnston diagnosed

23   plaintiff with methamphetamine and cocaine abuse, he felt that such abuse was currently in remission and

24   that she was "remaining abstinent from drug abuse." Tr. 189, 193.  The ALJ did discount the opinions of

25   both Dr. Whitehall and Dr. Biebuyck (Tr. 17-18), but, as discussed below, he erred in doing so.  Thus, the

26   undersigned finds the ALJ has provided insufficient reasons for rejecting Dr. Conaway's opinion.

27         B.      Dr. Biebuyck

28         Plaintiff argues the ALJ also erred in evaluating the opinion of Dr. Biebuyck concerning her mental

REPORT AND RECOMMENDATION
Page - 6

functional limitations and ability to work.  With respect to that opinion, the ALJ found as follows:

> Dr. Biebuyck diagnosed PTSD and drug dependence, and cluster B traits, and rated the claimant's GAF at 55 . . . Dr. Biebuyck stated that the claimant's PTSD and her physical and sexual abuse, as reported by the claimant, left her unable to work . . .
>
> That assessment of disability is considered, but it relied on the claimant's subjective reports, which are not particularly credible as discussed herein.  Further, disability is not consistent with a GAF of 55 which indicates no more than moderate impairment in social and occupational functioning.  Dr. Biebuyck specifically determined that the claimant could perform simple and repetitive tasks, and could interact with co-workers and the public; it is a bit uncertain if that assessment was for her current functioning or was a speculation of the results of treatment.  He stated that she would be likely to decompensate, but that would be limited if the claimant had appropriate treatment . . . That report is further evidence that the claimant's functioning is adequate when she refrains from substance abuse and complies with her prescribed treatment regimen.  Overall, Dr. Biebuyck's report is given some weight but it is not entirely persuasive.

Tr. 17-18.  Again, the undersigned agrees with plaintiff, and finds the ALJ's evaluation of the opinion of Dr. Biebuyck is unsupported by the substantial evidence in the record.

First, as explained with respect to the ALJ's evaluation of Dr. Conaway's opinion, it is questionable at best to discredit the opinion of an examining psychologist on the basis of the claimant's own subjective reports, and, in any event, in this case the ALJ erred in discounting plaintiff's credibility.  Second, while it may be that in general a GAF score of 55 indicates only a moderate level of impairment, the ALJ has not provided any convincing reasons why this diagnostic score is entitled to greater weight than the for more detailed findings and conclusions Dr. Biebuyck provided elsewhere in his report.  See Tr. 177-80.  As such, it appears the ALJ improperly substituted his own opinion for that of Dr. Biebuyck.  See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978).

It is true that Dr. Biebuyck did find that plaintiff was capable of performing simple, repetitive tasks, that she had "the potential to" interact appropriately with co-workers and the general public, and that the risk of her decompensating "with stress encountered in competitive work" could be "limited by appropriate and adequate outpatient psychiatric treatment and counseling." Tr. 179.  The ALJ took these findings to indicate plaintiff's "functioning is adequate when she refrains from substance abuse and complies with her prescribed treatment regimen." Tr. 18.  However, having the "potential" to interact with others, does not necessarily equate with the present ability to do so.  In addition, Dr. Biebuyck did not state to what extent treatment and counseling would limit plaintiff's risk of decompensation.  Dr. Biebuyck went on to state,

furthermore, that plaintiff only had the "potential to work in some capacity in the future," and that "[g]iven the chronicity of her" PTSD, and "the severity of her physical and sexual abuse," he did not believe that she "could currently maintain regular attendance in the work place," although she might be able to do so "in the future." Tr. 179-80.  Thus, contrary to the ALJ's findings, it seems quite clear that Dr. Biebuyck felt plaintiff had mental functional limitations that significantly restricted her ability to work.  Accordingly, the undersigned finds the ALJ failed to take these limitations properly into account.

C.    Dr. Whitehall

Dr. Whitehall diagnosed plaintiff with "chronic and severe" PTSD, severe and recurrent major depression, a borderline personality disorder, and amphetamine abuse. Tr. 330.  He opined that as a result of these impairments, plaintiff was severely limited in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and markedly limited in her ability to: learn new tasks; exercise judgment and make decisions; relate appropriately to co-workers and supervisors; and interact appropriately in public contacts. Tr. 331.  Dr. Whitehall also found plaintiff to have several other moderate mental functional limitations. Id.  He believed plaintiff would be so limited for a minimum of twenty-four months and a maximum of thirty-six months. Tr. 332.

In his decision, the ALJ stated that although he did consider Dr. Whitehall's report, he did not find it to be "consistent with the psychological testing and other examination reports" and plaintiff's activities. Tr. 17.  As plaintiff points out, however, the ALJ did not identify what psychological testing with respect to which Dr. Whitehall's report was inconsistent.  Indeed, at the end of his report, Dr. Whitehall stated that psychological testing showed plaintiff to be "severely depressed and anxious," with a "severe personality disorder," and that at times her "depression and thinking may be of psychotic proportions." Tr. 332.  This testing thus indicates that plaintiff had significant mental impairments that could in fact be consistent with the findings of Dr. Whitehall.  In addition, as discussed above, Dr. Whitehall's report is consistent with the significant work-related limitations found by Drs. Conaway and Biebuyck.  Further, as discussed below, the record supports plaintiff's testimony regarding her activities of daily living.  As such, the undersigned finds the ALJ erred in rejecting the opinion of Dr. Whitehall.

D.    Dr. Johnston

Plaintiff argues the ALJ erred in failing to provide any rationale for rejecting many of the moderate

mental functional limitations Dr. Johnston found she had.  While the ALJ did find plaintiff was limited to performing simple, repetitive tasks and to "less than occasional contact with the public and superficial contact with co-workers," he did not state what weight he gave any of the other several mental functional areas in which Dr. Johnston found plaintiff to be moderately limited.[2] Tr. 20.  In addition, in the paragraph immediately following his assessment of Dr. Johnston's findings, the ALJ did state "the DDS assessment is supported by much of the evidence, and it is given a fair degree of weight." Id.  Although not entirely clear, it can be assumed that the ALJ was referring to Dr. Johnston, who is a "DDS consultant."[3] Id.  Therefore, it does appear that the ALJ adopted the findings of Dr. Johnston, although he did not appear to include all of the limitations Dr. Johnston found in his assessment of plaintiff's residual functional capacity.  In failing to do so, the undersigned finds the ALJ erred.

II.     The ALJ Erred Finding Plaintiff's Post Traumatic Stress Syndrome Not Severe

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 416.920.  At step two, the ALJ must determine if an impairment is "severe". Id.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 416.920(c), 416.921(a); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual['s] ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect [her] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599,

---

[2]For example, Dr. Johnston also found plaintiff to be so limited in her ability to: maintain attention and concentration; perform activities within a schedule; maintain regular attendance; be punctual; complete a normal workday and workweek; perform at a consistent pace; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in unfamiliar places or use public transportation; set realistic goals; and make plans independently of others. Tr. 195-97.

[3]Another DDS consultant in the record, Clifford Thomas, Ph.D., did find that there was insufficient evidence that plaintiff had any mental impairments, which the ALJ noted in the paragraph immediately proceeding the paragraph in which he evaluated the opinion of Dr. Johnson. Tr. 20, 132. The ALJ did not specify which DDS consultant he was referring to when he stated that "the DDS assessment" was supported by "a fair degree of weight." Tr. 20.  However, since that statement came immediately after his evaluation of Dr. Johnson's opinion, and since the ALJ found plaintiff did have "severe" mental impairemtns, the undersigned finds the ALJ was referring to that opinion.

601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

Plaintiff argues the ALJ erred in finding her posttraumatic stress disorder to be not severe.  Tr. 16, 19.  The undersigned agrees.  Dr. Biebuyck and Dr. Conaway both diagnosed plaintiff with chronic PTSD, and Dr. Whitehall diagnosed her with "chronic and severe" PTSD.  Tr. 178, 338.  Although Dr. Clifford did not diagnose her with any mental impairment (Tr. 132), as discussed above, his opinion is unsupported by any diagnostic notes or clinical findings.  Further, while Dr. Johnston opined that the "PTSD diagnosis" did "not meet requirements," he offered no explain for his opinion. Tr. 193.  In addition, as non-examining physicians, both his opinion and the opinion of Dr. Clifford are entitled to less weight than those of Drs. Biebuyck, Conaway and Whitehall.

The opinions of Dr. Biebuyck, Dr. Conaway and Dr. Whitehall also show that plaintiff has suffered significant mental functional limitations due at least in part to her PTSD.  Tr. 178-80, 330-32, 338.  For example, Dr. Biebuyck specifically found plaintiff's PTSD "put her at risk for decompensation with stress encountered in competitive work," and was a major reason why he felt she would not be able to "maintain regular attendance in the work place."  Tr. 179-80.  As discussed above, furthermore, the ALJ did not give legally sufficient reasons for rejecting the opinions of any of these medical sources.  Accordingly, since the step two inquiry is merely a *de minimis* screening device to weed out groundless claims, the ALJ erred in not finding plaintiff's PTSD to be severe.

III.     The ALJ Erred in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible

1  and what evidence undermines the claimant's complaints." <u>Lester</u>, 81 F.3d at 834; <u>Dodrill v. Shalala</u>, 12

2  F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's

3  reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at 834.  The

4  evidence as a whole must support a finding of malingering. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th

5  Cir. 2003).

6         In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

7  evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

8  testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

9  also may consider a claimant's work record and observations of physicians and other third parties regarding

10  the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

11        The ALJ discounted plaintiff's credibility in part because he found that the medical evidence in the

12  record did "not appear to fully support" her "statements about her symptoms and limitations." Tr. 19.  A

13  determination by the ALJ that a claimant's complaints are "inconsistent with clinical observations" can

14  satisfy the clear and convincing requirement. <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297

15  (9th Cir. 1998).  Here, however, as discussed above, the ALJ erred in evaluating the medical evidence in the

16  record.  That evidence, furthermore, shows that plaintiff has significant mental functional limitations that

17  greatly impact her ability to engage in competitive employment.

18        The ALJ also discounted plaintiff's credibility in part due to her activities of daily living, stating in

19  relevant part as follows:

20         The claimant has alleged a great deal of reclusiveness, but she told Dr. Biebuyck that she
           and her boyfriend walked "everywhere," for shopping or for fun, and she attended NA
21         meetings.  She said that she did household chores . . . She cleans house for a disabled
           adult . . . She reported that she and her boyfriend spend a great deal of time digging
22         through garbage cans; this is apparently a recycling activity . . . When the claimant was
           in the hospital, she was observed to be pleasant and social with others . . . These reports
23         show that the claimant is much more active and functional than she has alleged.

24  Tr. 19-20.  To determine if a claimant's symptom testimony is credible, the ALJ may consider his or her

25  daily activities. <u>Smolen</u>, 80 F.3d at 1284.  Such testimony may be rejected if the claimant "is able to spend a

26  substantial part of his or her day performing household chores or other activities that are transferable to a

27  work setting." <u>Id.</u> at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability

28  benefits, and "many home activities may not be easily transferable to a work environment." <u>Id.</u>

1       The ALJ's description of plaintiff's activities of daily living, however, is not entirely accurate, nor do

2   those activities necessarily contradict plaintiff's allegations that she has significant <u>mental</u> functional

3   limitations.  Although plaintiff did tell Dr. Biebuyck that she walked "everywhere" with her boyfriend,

4   including to the grocery store and "for fun," she also reported that "other than her boyfriend and seeing her

5   children," she kept "to herself." Tr. 178.  Further, the fact that she did "laundry and cleaning occasionally,"

6   does not indicate she has no problems functioning mentally. <u>Id.</u>  It is true the record does indicates plaintiff

7   helped her disabled aunt with the household chores. Tr. 336.  Again, however, the fact that plaintiff is able

8   to help and be around one of her relatives, does not necessarily discredit her with respect to, for example,

9   her allegations of having difficulty being around co-workers, supervisors and the general public.

10      The record also fails to indicate that plaintiff engaged in "a recycling activity," as the ALJ found. Tr.

11  20.  Rather, plaintiff reported that she and her boyfriend spent "a lot of time digging in the trash cans for

12  things of use at night." Tr. 100.  Again, plaintiff's primary allegation is that she is unable to work due to her

13  mental impairments, not because of a physical incapacity to perform exertional activities.  Thus, the fact that

14  she and her boyfriend search through trash cans at night for things of use, does not impugn in any way her

15  credibility with respect to her mental limitations.  It is true that the medical evidence in the record indicates

16  plaintiff was pleasant and social with others at times during the last few days of June 2002, when she was

17  receiving inpatient treatment. Tr. 236-37, 239-40, 243-46, 249, 251, 279, 282-83.  However, these clinical

18  notations are hardly clear and convincing evidence that plaintiff has been much more functional in public and

19  with others when not hospitalized than she has alleged.  Indeed, Dr. Biebuyck noted she tended "to socially

20  isolate." Tr. 179.

21      The ALJ further discounted plaintiff's credibility for the following reason:

22      [T]he medical record shows that the claimant is significantly improved when she
        complies with medication.  Other reports of multiple no-shows . . . suggest that the
23      claimant is somewhat cavalier about compliance.  There is no evidence that her
        impairments or their symptoms interfere with her ability to obtain and use prescribed
24      treatment.

25  Tr. 20.  It is true that plaintiff has reported benefitting from taking medication for her mental impairments.

26  Tr. 146, 150, 154, 166, 221.  There also is some indication in the record that plaintiff has not been entirely

27  compliant with recommended treatment. Tr. 150, 193, 314, 332.  Failure to assert a good reason for not

28  seeking or following a prescribed course of treatment, or a finding that a proffered reason is not believable,

1    "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th

2    Cir. 1989).  On the other hand, if plaintiff provides evidence of a good reason for not taking medication, her

3    symptom testimony cannot be rejected because she failed to do so.  Smolen, 80 F.3d at 1284.  The record

4    here indicates plaintiff has run out of medication at times. Tr. 146, 150, 154, 166, 332.  Other evidence in

5    the record, furthermore, shows plaintiff has been compliant with, and even sought, medication and mental

6    health counseling. Tr. 151, 154-55, 166, 179, 193, 214, 217, 221, 313-14, 338.

7           In any event, the record indicates that even if plaintiff receives and complies fully with all of her

8    recommended treatment, a favorable prognosis is far from assured.  For example, while Dr. Johnston felt

9    that with therapy, plaintiff could "adapt to changes" and Dr. Whitehall felt her symptoms were treatable, Dr.

10   Whitehall believed the "severity and chronicity" of her condition rendered the outcome "uncertain," and she

11   would remain markedly to severely limited in several functional areas for a period of two to three years. Tr.

12   331-32.  Dr. Biebuyck thought that psychiatric treatment and counseling could limit, but not eliminate, the

13   risk that plaintiff would decompensate in competitive work settings. Tr. 179.  He did not indicate,

14   furthermore, whether such treatment measures would in addition enable her to maintain regular work place

15   attendance in the future. Tr. 180.  The undersigned, therefore, finds that this also is not a clear and

16   convincing reason for discounting plaintiff's credibility.

17          The ALJ next discounted plaintiff's credibility in part for the following reason:

18          A DDS interviewer met with the claimant in November 2000 and reported that she had
             no difficulty except for some nervousness.  A reference to difficult sitting is noted, but
19          there is no medical evidence to support that observation . . . This report suggests that
             the claimant may have some difficulty interacting with others but that she is capable of
20          doing so.

21   Tr. 20.  This, however, is only the report of one state agency staff person.  It thus is difficult to see how that

22   report outweighs the opinions of the three examining psychologists and psychiatrists in the record, who

23   found plaintiff had significant difficulties interacting with others and limitations in her ability to function

24   socially.  As such, this too is not a clear and convincing reason for discounting her credibility.

25          Finally, the ALJ discounted plaintiff's credibility in part because of her "past criminal history of

26   convictions for meth[amphetamie] possession," which, the ALJ stated, tended to "impugn her testimony."

27   Id.  It is difficult to see, however, how the fact that plaintiff has a prior conviction for a crime not

28   traditionally considered to be a crime of dishonesty or false statement adversely impacts her credibility with

respect to her symptom testimony.  The ALJ has not shown, and the record does not indicate, that the fact that plaintiff was convicted for the crime of drug possession in the past impugns her credibility concerning her application for disability benefits.  Accordingly, the undersigned finds that the ALJ has failed to provide clear and convincing reasons for discounting plaintiff's credibility.

IV.    The ALJ Erred in Finding Plaintiff Had the Residual Functional Capacity to Perform Other Work Existing in Significant Numbers in the National Economy

If a disability determination "cannot be made on the basis of medical factors alone," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why his or her "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e), 416.920(d)-(e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

1   Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

2   the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

3   description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)

4   (because ALJ included all limitations that he found to exist, and those findings were supported by

5   substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

6        Here, the ALJ assessed plaintiff with the following residual functional capacity:

7       The evidence in the record as whole shows that the claimant has retained a residual
        functional capacity without physical limitations.  She can perform simple, repetitive
8       tasks.  She should have less than occasional contact with the public and superficial
        contact with co-workers.

9
10  Tr. 20.  As discussed above, however, the ALJ erred in rejecting the opinions of Drs. Biebuyck, Conaway,

    Whitehall, and Johnston regarding plaintiff's mental functional limitations and ability to work.  As such, the
11
    ALJ also erred in assessing plaintiff's residual functional capacity.
12
         At the hearing, the ALJ posed the following hypothetical question to the vocational expert:
13
14      [L]et me describe a hypothetical person to you.  And that is a female aged 39.  We'll call
        this hypothetical number one.  With a GED, and this hypothetical person has no
        exertional limitations. But would be limited to less than occasional contact with the
15      public, and simple repetitive work, incidental contact with coworkers only.

16  Tr. 417.  Based on this hypothetical question, the vocational expert testified there were other jobs plaintiff

17  could perform.  Id.  The ALJ then relied on the vocational expert's testimony to find plaintiff capable of

18  performing other work existing in significant numbers in the national economy. Tr. 21-22.  However,

19  because the hypothetical question was based on an erroneous residual functional capacity assessment, the

20  vocational expert's testimony was not based on an accurate description of plaintiff's remaining capabilities,

21  and therefore was not reliable.  Accordingly, the ALJ erred in finding plaintiff not disabled at step five of the

22  disability evaluation process based on such testimony.

23  V.   This Matter Should Be Remanded For An Award of Benefits

24       The remaining question then is to determine the appropriate remedy for the ALJ's errors, that is, to

25  remand this matter for further administrative proceedings or for an outright award of benefits.  Defendant

26  argues remand is appropriate because there are unresolved issues regarding plaintiff's disability, and thus

27  further administrative proceedings to re-evaluate the medical evidence in the record regarding her mental

28  impairments is necessary.  The undersigned disagrees.

1      The court may remand this case "either for additional evidence and findings or to award benefits."

2  Smolen, 80 F.3d at 1292.  Generally, when the court reverses an ALJ's decision, "the proper course, except

3  in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v.

4  Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is

5  clear from the record that the claimant is unable to perform gainful employment in the national economy,"

6  that "remand for an immediate award of benefits is appropriate." Id.

7      Benefits may be awarded where "the record has been fully developed" and "further administrative

8  proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

9  1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

10          (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
            evidence, (2) there are no outstanding issues that must be resolved before a
11          determination of disability can be made, and (3) it is clear from the record that the ALJ
            would be required to find the claimant disabled were such evidence credited.

12  Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Here, the

13  undersigned has found the ALJ erred in evaluating the medical evidence in the record regarding plaintiff's

14  mental impairments and limitations, and erred in discounting plaintiff's credibility.  Thus, the first part of the

15  above test for determining whether to remand for an award of benefits has been satisfied.

16      Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or

17  examining physician," that opinion is credited "as a matter of law." Lester, 81 F.3d at 834 (citation

18  omitted).  Likewise, "where the ALJ improperly rejects the claimant's testimony regarding his limitations,

19  and the claimant would be disabled if his testimony were credited," the court "will not remand solely to

20  allow the ALJ to make specific findings regarding that testimony." Id. (citation omitted).  Instead, "that

21  testimony is also credited as a matter of law." Id.

22      Because the ALJ erred in rejecting the opinion of Dr. Whitehall that plaintiff is markedly impaired in

23  her ability to respond appropriately to and tolerate the pressures and expectations in a normal work setting,

24  that opinion is credited as a matter of law.  Further, it is clear from the record that the ALJ would be

25  required to find plaintiff disabled based on that opinion, as, at the hearing, the vocational expert testified that

26  someone with "a marked inability" to function in that area would "be unable to sustain employment." Tr.

27  418.  Dr. Whitehall also stated that plaintiff would be so impaired for at least two years. Tr. 332; see 42

28  U.S.C. § 423(d)(1)(A) (disability defined as inability to engage in any substantial gainful activity by reason

REPORT AND RECOMMENDATION
Page - 16

1    of any medically determinable physical or mental impairment which has lasted or can be expected to last for

2    a continuous period of not less than 12 months).

3         Plaintiff further argues that the findings of Dr. Biebuyck also shows that she is unable to sustain

4    employment.  While Dr. Biebuyck did state he did not believe plaintiff could maintain regular attendance in

5    the work place (Tr. 180), the vocational expert did not provide any testimony as to whether that limitation

6    would preclude plaintiff from performing all employment. See Bunnell v. Barnhart, 336 F.3d 1112, 1116

7    (9th Cir. 2003). ("In cases where the vocational expert has failed to address a claimant's limitations as

8    established by improperly discredited evidence, we consistently have remanded for further proceedings

9    rather than payment of benefits.").  Along the same lines, because Dr. Conaway opined that she thought it

10   "unlikely" plaintiff would "be able to work in the next year given the multiplicity of her problems and her

11   non-existent work history," it is not entirely clear how much Dr. Conaway felt plaintiff was unable to work

12   due to her mental impairments, and thus whether the ALJ would be required to find her disabled based on

13   this opinion.[4] Tr. 338 (emphasis added).

14        Because the ALJ also erred in discrediting plaintiff's testimony regarding her symptom complaints,

15   that testimony is credited as a matter of law as well.  While the courts do have "some flexibility" in how they

16   apply the "credit as true" rule when an ALJ improperly discredits a claimant's symptom testimony in

17   determining whether to remand for an award of benefits, here there is sufficient evidence in the record, as

18   discussed above, to find plaintiff's testimony should be credited as a matter of law and benefits awarded on

19   that basis as well. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

20        In essence, defendant argues that there still are outstanding issues in this case that must be resolved

21   before a determination of disability can be made.  The undersigned, however, finds that there are no such

22   outstanding issues.  Here, Dr. Whitehall's opinion concerning plaintiff's ability to respond appropriately to

23   and tolerate the pressures and expectations in a normal work setting, plaintiff's own testimony, and the

24   testimony of the vocational expert, all support plaintiff's allegations that she is incapable of being gainfully

25   _____

26        [4]Plaintiff also argues the limitations found by Drs. Biebuyck, Conaway, Whitehall and Johnston show that she is unable
     to sustain even unskilled, sedentary work as defined by 20 C.F.R. § 416.921 and by SSR 96-9p. Section 416.921, however, defines
27   "basic work activities" with respect to the step two determination of whether a claimant has a "severe" impairment. The purpose
     of SSR 96-9p, furthermore, is to provide guidelines for evaluating the ability to do less than a full range of sedentary work. See
28   1996 WL 374185.  Here, because plaintiff does not contest the ALJ's residual functional capacity finding that she has no physical
     limitations, SSR 96-9p does not appear to be applicable.

employed due to her mental impairments and limitations.

Accordingly, the undersigned finds that the record has been fully developed, and that remanding this matter for additional proceedings "would serve no further purpose."[5] Smolen, 80 F.3d at 1292; Holohan, 246 F.3d at 1210. Indeed, allowing the Commissioner to decide these issues again "would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." Benecke, 379 F.3d at 595; see also Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) (noting that the "Commissioner, having lost this appeal, should not have another opportunity . . . any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings.").

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ improperly determined plaintiff was not disabled. Accordingly, the ALJ's decision is reversed, defendant's motion to remand is denied, and this matter is remanded to the Commissioner for an award of benefits.

DATED this 13th day of September, 2005.

_Karen L. Strombom_
Karen L. Strombom
United States Magistrate Judge

---

[5]Defendant argues that this matter also should be remanded for further administrative proceedings to properly evaluate plaintiff's substance abuse disorder, stating that it is not clear from the record that the ALJ would be required to find plaintiff disabled had a proper analysis of that disorder been performed by the ALJ. Under the Social Security Act, a claimant may not be found disabled if alcoholism or drug addiction would be "a contributing factor material to the Commissioner's determination" that the claimant is disabled. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)). Similarly, the Social Security Regulations also require that the Commissioner determine whether "drug addiction or alcoholism is a contributing factor material to the determination of disability." Id. (citing 20 C.F.R. §§ 404.1535(a), 416.935(a)).

To determine whether a claimant's alcoholism or drug addiction is a materially contributing factor, the ALJ first must conduct the five-step disability evaluation process "without separating out the impact of alcoholism or drug addiction." Id. at 955. If the ALJ finds the claimant is not disabled, "then the claimant is not entitled to benefits." Id. If the claimant is found disabled "and there is 'medical evidence of [his or her] drug addiction or alcoholism,'" the ALJ proceeds "to determine if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs.'" Id. (citing 20 C.F.R. §§ 404.1535, 416.935). Thus, if a claimant's current limitations "would remain once he [or she] stopped using drugs and alcohol," and those limitations are disabling, "then drug addiction or alcoholism is not material to the disability, and the claimant will be deemed disabled." Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001).

It is true that plaintiff has had a fairly long past history of drug abuse (Tr. 177, 334), that the ALJ noted that many of her problems were related to drug abuse, and that the ALJ found she had a "severe" drug abuse disorder. It also may be true that technically the ALJ did not conduct a proper drug abuse analysis under Bustamante. As discussed above, however, the weight of the medical and other evidence in the record indicates that plaintiff's substance abuse disorder is in remission and that her mental impairments and limitations are not due to such abuse. Also as discussed above, the step two inquiry is a de minimis screening device to dispose of groundless claims. Thus, the fact that the ALJ found plaintiff had a "severe" drug abuse disorder does not in itself establish that she has significant mental functional limitations stemming therefrom, as, indeed, the weight of the medical evidence in the record shows that she does not. Thus, on this issue too, the undersigned finds that the record has been fully developed and that remanding for additional proceedings would serve no further purpose.